UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

CAROL WEEMS                                                                      PLAINTIFF

v.                                                        CIVIL ACTION NO. 4:12cv88-DPJ-FKB

LAUDERDALE COUNTY SCHOOL                                          DEFENDANTS
DISTRICT and KAREN RHODES

ORDER

This age-discrimination case is before the Court on Defendants' Motion to Dismiss for

Failure to State a Claim, to Dismiss based upon Qualified Immunity, and for Summary Judgment

[47].  The Court has considered all of the parties' submissions and the applicable law and

concludes that no questions of fact exist.  The motion is therefore granted.

I.       Facts and Procedural History

Plaintiff Carol Weems was born June 7, 1954.  Since 1998, she has worked as a teacher

and school administrator for Defendant Lauderdale County School District ("the District").

Weems has a bachelor of science in elementary education, a master's degree in elementary

education, a specialist degree in educational leadership, and a Ph.D. in educational administration

and supervision with an emphasis in higher-education administration.  In general terms, Weems

contends that she was demoted and also passed over for several available positions within the

District for the 2010 through 2013 school years.  According to her, the decisions were made on

the basis of age or alternatively as the result of the tortious acts of her supervisor Karen Rhodes.

To better understand Weems's contentions, it is necessary to look further back into her

employment history.

Until 2009, Weems worked as principal and assistant principal at West Lauderdale Middle and High Schools.  Starting with the 2009–2010 school year, Weems moved to the District's central office.  There, Weems worked under defendant Karen Rhodes as Supervisor of Special Services and District Test Coordinator.

By all accounts, Rhodes and Weems did not work well together, and District Superintendent Randy Hodges and Assistant Superintendent Ed Mosley both perceived Weems to have done a poor job as District Test Coordinator.  Hodges removed Weems as Test Coordinator for the 2010–2011 school year, and the District placed Weems in a Vocational-Rehabilitation Transition Specialist position that was co-funded by the Mississippi Department of Rehabilitation Services ("MDRS").  At the end of the 2010–2011 school year, MDRS concluded that it could not work with Weems, Elrod Dep. [52-15] at 28–29, and notified the District that it "recommend[ed] a change of staff for the current transition specialist for Lauderdale County Schools."  Elrod Letter [47-12].  Hodges followed that recommendation and notified Weems that her contract would not be renewed for the 2011–2012 school year but extended an offer that Weems continue to work as Supervisor of Special Services in a part-time capacity for the 2011–2012 year.  Weems accepted the part-time position, and she remains employed as Supervisor of Special Services earning half her former salary.  Rhodes is still Weems's immediate supervisor.

Weems desired another position, and beginning with the 2010–2011 school year, several became available.  The District filled a number of spots without posting the positions.  Weems was not selected for any of them.  Other positions were advertised, and Weems applied, but she was never selected.  She believes that age was the reason others were selected.

2

Aggrieved by these events, Weems filed charges of discrimination with the EEOC on August 15, 2011, May 16, 2012, and November 2, 2012. She filed this lawsuit on May 29, 2012, against the District and Rhodes, and she amended the complaint on April 2, 2013. Weems alleges a claim against the District under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, and a state-law tort claim against Rhodes. Following the close of discovery, Defendants filed their dispositive motion. The matters raised have been fully briefed, and the Court has personal and subject-matter jurisdiction and is prepared to rule.

II.     Standard

Although Defendants present their motion under both Rules 12 and 56, the parties have each submitted record evidence in support of their positions and discovery is closed. The Court will therefore consider the motion as one for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(d). Summary judgment is warranted under Rule 56(a) when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing

that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted).  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."  *Little*, 37 F.3d at 1075.  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citations omitted).

III.    Analysis

Weems's theory of liability in this case is that *either* the District discriminated against her because of her age under the ADEA, *or* Rhodes tortiously interfered with Weems's employment opportunities within the District.

A.      ADEA Claims

The ADEA makes it "unlawful for an employer to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  To prevail on an ADEA claim, a plaintiff must establish, by direct or circumstantial evidence, "that age was the 'but-for' cause of the employer's adverse action."  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009).  "Where, as here, a plaintiff provides no direct evidence of age discrimination, we apply the familiar *McDonnell Douglas* burden-shifting framework."  *Holliday v. Commonwealth Brands, Inc.*, 483 F. App'x 917, 921 (5th Cir. 2012) (citations omitted).

Under that framework, Weems must first establish a prima facie case by showing: (1) she was demoted or not promoted; (2) she was qualified for the position at issue; (3) she was within the protected class at the time of the demotion or non-promotion; and (4) she was either i) not selected in favor of someone outside the protected class, ii) not selected in favor of someone younger, or iii) otherwise not selected or demoted because of her age. *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010). If Weems establishes a prima facie case, the burden shifts to the District to articulate a legitimate, non-discriminatory reason for demoting or not promoting her. *See Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). Once the District meets its burden of production, Weems must "rebut the employer's purported explanation, to show that the reason given is merely pretextual." *Id.* She may do so "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Jackson*, 602 F.3d at 378–79 (citation omitted). Ultimately, Weems must show that age was the "but for" cause of the adverse-employment actions. *Gross*, 557 U.S. at 173–78. Having set forth the applicable framework, the Court will consider separately the failure-to-promote and demotion claims.

1.      Failure to Promote

Weems highlights ten hiring decisions that she claims were tainted by age discrimination: (1) the 2011–2012 Northeast Lauderdale High School Assistant High School Principal position given to Steve Nelson; (2) the 2011–2012 West Lauderdale Middle School Principal position given to Linda Dulaney; (3) the 2012–2013 District Test Coordinator / K-4 Curriculum Director position given to Teri Edwards; (4) the 2012–2013 Northeast Elementary Principal position given to Tammy Crowe; (5) the 2012–2013 Transition Specialist position given to Dianne

5

Freeman; (6) the 2010–2011 West Lauderdale High School Principal position given to Kevin Cheatham; (7) the 2010–2011 West Lauderdale Middle School Principal position given to Larry Vick; (8) the 2010–2011 West Lauderdale Elementary School Principal position given to Rosemary Harris; (9) the 2010–2011 West Lauderdale Elementary administrative position given Russell Keene; and (10) the 2011–2012 Clarkdale High School part-time administrative and part-time teaching position given Ken Hardy.  Three claims, those involving Vick, Harris, and Freeman fail to state a prima facie case.  The others fail at Weems's ultimate burden under the burden-shifting analysis.

a.      Prima Facie Case

For the most part, the District does not dispute Weems's prima facie burden.  *See* Defs.' Mem. [48] at 7 ("[I]t may be accepted for purposes of this Motion that plaintiff is a member of the protected class and that she was adversely affected by an employment action in that she was not selected for the positions for which she applied or expressed an interest after the 2010–2011 school year.").  But it does point to other evidentiary deficiencies that affect Weems's prima facie case.  Two of the claims fail because the comparators—Larry Vick and Rosemary Harris—were not sufficiently younger than Weems.  The third fails because Weems was not qualified for the position awarded to Diane Freeman.

Starting with the comparator's age, the Fifth Circuit has noted, "[t]he ADEA does not lend itself to a bright-line age rule and in this respect differs from racial or sex discrimination cases . . . ."  *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1506 (5th Cir. 1988) (observing that a 40 year old could not raise an inference of discrimination if replaced by someone one day shy of 40).  In *O'Connor v. Consolidated Coin*, the United States Supreme Court echoed the

Fifth Circuit's observation that marginal differences in age might not be sufficient to state a prima facie case. 517 U.S. 308 (1996). The Court noted that a prima facie case requires "evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion . . . ." *Id*. at 312 (citing *Teamsters v. United States*, 431 U.S. 324, 358 (1977) (punctuation altered)). It then held that "[b]ecause the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." *Id*. at 313. So the key is whether the comparator is "substantially younger" such that the evidence is "adequate to create an inference" of discrimination. *Id*. at 312–13.

In this case, Weems and Vick are the same age, and there is no other evidence sufficient to make a prima facie case of age discrimination as to that decision. The claim with respect to Vick's appointment at West Lauderdale Middle School is therefore subject to summary judgment.

Harris presents a tougher question. Weems relies on *Bienkowski*, because the comparator in that case was five years younger than the plaintiff, the approximate difference between Weems and Harris. But *Bienkowski* merely held that the age difference presented a "close question," which it skipped and ultimately considered as part of the pretext analysis. *Bienkowski*, 851 F.2d at 1506. And *Bienkowski*'s articulation is slightly different than the rule adopted eight years later in *O'Connor*. After *O'Connor*, the Fifth Circuit decided *Rachid v. Jack In The Box, Inc*., and again faced a comparator who was five years younger than the plaintiff. 376 F.3d 305, 313 (5th Cir. 2004). As in *Bienkowski*, the court avoided the age disparity question at the prima facie

7

stage calling it "close."  *Id*.  But the court perhaps hinted that *Bienkowski*, which it described as

"pre-*O'Connor*," might not hold.  *Id*. at 313 n.12 (comparing *Bienkowski* with *Grosjean v. First*

*Energy Corp*., 349 F.3d 332, 336–40 (6th Cir. 2003) where the Sixth Circuit held that "in the

absence of direct evidence that the employer considered age to be significant, an age difference

of six years or less between an employee and a replacement is not significant").  And while a

five-year age difference is apparently a "close call," a four-year difference is insufficient as a

matter of law.  *Earle v. Aramark Corp*., 247 F. App'x 519, 523 (5th Cir. 2007) (citing *O'Connor*,

517 U.S. at 313; *Rachid*, 376 F.3d at 313; *Grosjean*, 349 F.3d at 338).

In this case, the precise age difference is unknown.  Weems was born June 7, 1954, but

Weems never states Harris's age or date of birth.  In fact, the sum total of her attention to this

hiring decision is the observation that "Harris was moved from Northeast Middle School to West

Lauderdale Elementary School for the 2010–2011 school year."  Pl.'s Mem. [51] at 14.  For its

part, the District submitted a September 2013 affidavit stating that Harris was 54 as of that date.

Defs.' Reply [55] Ex. N ¶ 3.  While Weems was 59 as of September 2013, that does not

necessarily mean the two were five years apart at the time the decision was made.  The precise

age difference at that time depends on what month Harris was born, and that information is not in

this record.

Whether Weems and Harris are five or four years apart demonstrates the difficulty in

applying the fourth step of the prima facie case.  Regardless, the record is remarkably thin, and

Weems never truly explains nor demonstrates that the evidence is adequate "to create an

inference that" the employment decision was based on her age.  *O'Connor*, 517 U.S. at 312

(citation omitted).  For this reason, she has failed to create a prima facie case as to Harris's selection at West Lauderdale Elementary School.

Finally, as to Freeman, Weems contends that Rhodes chose Freeman for the Transition Specialist position in 2012–2013 without informing Weems of the opening.  Pl.'s Mem. [51] at 14.  But according to the District, the position was a teaching position that required a Special Education Certification Weems lacked.  Defs.' Mot. [47] at 10 (citing Def.'s Resps. to Pl.'s First Set of Interrogs. [47-19] at 8; Rhodes Aff. [47-10] at 4; Rhodes Dep. [52-3] at 6, 43; Hodges Dep. [52-2] at 37; Mosley Dep. [52-4] at 29).  Weems does not address the District's argument, and the Court finds that the motion should be granted as to this aspect of the claim.

b.      Legitimate, Non-discriminatory Reasons

As for the seven remaining decisions, Weems never expressly states that the District failed to offer a legitimate non-discriminatory reason.  *See* Pl.'s Mem. [51] at 21–22.  She does, however, imply in this section of her memorandum that the decisions were subjective.  *Id.*  Later, in her pretext analysis, Weems directly argues that the District's justifications were purely subjective and therefore pretextual.  *Id.* at 22–23.  This argument is better addressed under the Defendant's burden.  *See Alvarado v. Tex. Rangers*, 492 F.3d 605, 616 (5th Cir. 2007) (examining sufficiency of subjective reasons for employment decision at second phase of burden-shifting analysis).  Indeed, the subjective nature of a decision is not proof of pretext.  *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 882 (5th Cir. 2003).

Though Weems often observes that no objective reason was offered, the Fifth Circuit has explained that "[a]n employer's subjective reason for not selecting a candidate, such as a subjective assessment of the candidate's performance in an interview, *may serve* as a legitimate,

nondiscriminatory reason for the candidate's non-selection." *Alvarado*, 492 F.3d at 616

(emphasis added, citations omitted).  But a subjective reason "will satisfy the employer's burden

of production . . . only if the employer articulates a clear and reasonably specific basis for its

subjective assessment." *Id.* (citations omitted).  In *Alvarado*, the court noted that the defendant

"provided [no] evidence of why the Board rated the other candidates . . . higher than Alvarado"

and concluded that the defendant's "ostensibly legitimate, nondiscriminatory reason for

Alvarado's non-selection—her performance in the promotion and selection process—[was]

insufficient to satisfy [the defendant's] burden of production."  *Id.* at 617 (citations omitted).

        In contrast, the Fifth Circuit has found the burden met where the subjective reasons were

supported by more specific facts.  For example, in *Joseph v. City of Dallas*, the subjective

interview evaluations were found sufficient where a candidate for a police-officer position

"provided poor answers to the hypothetical police scenarios and seemed unable to logically

process information."  277 F. App'x 436, 441 (5th Cir. 2008); *see also Browning v. Sw. Research

Inst.*, 288 F. App'x 170, 176-78 (5th Cir. 2008) (concluding that the defendant provided "clear

and reasonably specific bases for [its] subjective assessments" where the plaintiff's performance

evaluations "indicate[d], among other things, that she made gratuitous, negative comments about

her colleagues; discussed internal [company] matters with clients; failed to follow [company]

procedures; made an unauthorized business trip; failed accurately to report her time; and was

reluctant to participate in certain [company] initiatives"); *Churchill v. Tex. Dep't of Criminal

Justice*,  No. 12-20691, 2013 WL 4406706, at *3 (5th Cir. Aug. 19, 2013) (concluding that

defendant met burden of production where successful candidate's interview answers were "more

thorough and more specific to the questions that were asked, [and] demonstrably more professional and focused than [the plaintiff's] and certainly more original").

In sum, a naked subjective opinion is not sufficient to satisfy the District's burden of production.  But a reason is sufficient if "the employer articulates a clear and reasonably specific basis for its subjective assessment."  *Alvarado*, 492 F.3d at 616.  In this case, Weems contends that the District's explanations were based on nothing more than its subjective beliefs, but she has understated the record—and in some cases dramatically so.  The Court will therefore examine the record as to each decision.[1]

i.     2011–2012 Northeast Lauderdale High School Assistant<br>High School Principal Position

Steve Nelson, age 44,[2] was hired as Northeast Lauderdale High School Assistant Principal following an interview "by a panel of 5 teachers and Principal Rob Calcote."  Def.'s Resps. to Pl.'s First Set of Interrogs. at 6.  Weems was among the applicants interviewed, and she "was ranked third by five members of the panel and fourth by the sixth member of the panel."  *Id.*  Calcote recommended Nelson, who received the majority of first place votes, and Hodges accepted that recommendation.  Calcote Dep. [47-18] at 17.

The only reason for the decision Weems acknowledges in her Response is Calcote's belief that Nelson was a "good fit."  Pl.'s Mem. [51] at 11.  But Calcote's testimony went well

---

[1]There are also instances where Defendants' description of the evidence in support of their positions was incomplete.  And while the Court has no "duty to sift through the record in search of evidence to support a party's" position on summary judgment, *Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 896 (5th Cir. 2013), Rule 56(c)(3) and (e)(3) permit the Court to consider the record as a whole and grant summary judgment when appropriate.

[2]Unless otherwise noted, the ages are at the time of the employment decision.

11

beyond this unadorned subjective comment.  Calcote testified at length about Nelson's accomplishments at the school and his ties to the community.  Calcote Dep. 13–17.  Among other things, Nelson had "pinch hit" for the assistant principal and principal, *id*. at 15, knew and was liked by the students, *id*., had a proven track record working with the families in this particular community, *id*. at 14–15, had successfully restored the school's football program, *id*. at 15, and was a strong disciplinarian, *id*.  Calcote also noted that the teachers on the selection committee—with whom Nelson had worked—were comfortable with Nelson as their choice and that some concern existed over Weems's response to a gun safety question.  *Id*. at 13, 17.  The District also noted the testimony of one of the interviewing teachers who ranked Nelson first because "those already there should have an opportunity to have that job first."  Moore Dep. [55-11] at 9.  The District met its burden of production on this claim.

     ii.  2011–2012 West Lauderdale Middle School Principal Position

   The District promoted Linda Dulaney, age 49, to principal at West Lauderdale Middle School.  Both Dulaney and Weems applied and were interviewed for the job.  As Weems notes, she holds a more advanced degree than Dulaney.  Pl.'s Mem. [51] at 12.  Weems also notes that while Mosley liked Dulaney's past performance and answers in the interview, he could neither recall the precise questions nor identify any objective criteria that would place Dulaney above Weems.  *Id*.  But as stated, a subjective reason can satisfy the burden of production as long as the defendant "articulates a clear and reasonably specific basis for its subjective assessment." *Alvarado*, 492 F.3d at 616.  Here, Mosley relied on Dulaney's past performance.  Mosley Dep. at 26.  He and Hodges specifically noted that Dulaney had been a successful principal and had

worked in the feeder elementary school for the middle school she was asked to lead.  Mosley Dep. 24–27; Hodges Dep. 32–33.  Hodges further noted that Dulaney "lives in the community, which I think is important in our particular situation with our community-based schools and supported by the community as they are."  Hodges Dep. 33.  These justifications were reasonably specific and satisfy the burden of production.

### iii.    2012–2013 District Test Coordinator / K-4 Curriculum Director Position

Teri Edwards, age 43, was hired as the District Test Coordinator / K-4 Curriculum Director because Hodges "thought she would do a good job, had the experience."  Hodges Dep. 35.  According to Weems, Edwards was younger and less credentialed, and the only explanation offered was that Hodges "thought Edwards would do a good job."  Pl.'s Mem. [51] at 13 (citing Hodges Dep. 35).  Hodges did say Edwards would do a good job, but he said more, citing Edward's "outstanding job" performance as principal of 948 students and a large staff.  Hodges Dep. 35.  He said Edwards "had been very consistent with performing at what I thought was a very high level," *id*., and mentioned that she was considered for the curriculum director's job when it was previously filled so Hodges was already "high on Ms. Edwards from day one," *id*.  This testimony is more specific than the evidence in *Alvarado* where the employer offered pure subjective assessments of the candidate's interview performances with no supporting evidence.  The District met its burden of production as to this claim.

### iv.    2012–2013 Northeast Elementary Principal Position

Tammy Crowe, age 43, was promoted to the principal position at Northeast Elementary School after she and other candidates, including Weems, were interviewed by Mosley, Ryan

13

Powell, and Teri Edwards.  Def.'s Resps. to Pl.'s First Set of Interrogs. at 7.  "Crowe was ranked highest by the panel and a recommendation was made to [Hodges] to hire Ms. Crowe.  [Hodges] then made the decision."  *Id.*

Weems supports this portion of her claim by citing Teri Edwards's testimony that she could not provide an objective criteria for the decision.  Pl.'s Mem. [51] at 13 (citing Edwards Dep. [52-19] at 27–28.  But again, objective reasons are not required.  *Alvarado*, 492 F.3d at 616.  And Weems has not addressed the balance of Edwards's testimony where she explained why Crowe's answers were better than Weems's.  According to Edwards, Crowe "answered the question[s] directly . . . [and] specifically," while Weems "answered very vaguely . . . [and] was not very specific."  Edwards Dep. 13; *see also id.* at 16.  When asked whether she was merely making a subjective decision, Edwards responded that Weems "didn't answer the questions," and Edwards further recalled the types of questions that were asked.  *Id.* at 13.

The District's evidence regarding this decision was "reasonably specific" and meets its burden of production.  *Compare Alvarado*, 492 F.3d at 617 (finding basis insufficient where defendant "provided [no] evidence of why the Board rated the other candidates . . . higher than Alvarado"), *with Churchill*, 2013 WL 4406706 at *3 (holding that employer met its burden where members of interview panel described interview answers of successful candidate as "more thorough and more specific to the questions that were asked").

        v.     2010–2011 West Lauderdale High School Principal Position

Hodges decided to replace retiring West Lauderdale High School Principal Mike Ethridge with West Lauderdale Middle School Principal Kevin Cheatham, age 45.  The only explanation

14

for the decision Weems acknowledges in her Response is Hodges's testimony that he "felt very comfortable recommending Kevin Cheatham for being qualified and that he would be able to do the job and do it well, because of what I had observed." Pl.'s Mem. [51] at 14 (citing Hodges Dep. 26). If that were all, then the question might be closer, but the record does not stop there.

Hodges explained that he "[f]elt like [Cheatham's] performance and his experience justified he being the principal." Hodges Dep. 26. Moreover, Mosley explained that the decision was made on short notice because of Ethridge's late decision to retire—a decision that set in motion many of the disputed decisions as the District shuffled its staff to meet the needs of the rapidly-approaching school year. Mosley Dep. 19. And Mosley pointed out that Cheatham moved from West Lauderdale Middle School Principal to West Lauderdale High School Principal, *id*. at 18, so he came from the high school's feeder school. Again, the District has brought forward more than a mere subjective opinion. The District met its burden of production as to this claim.[3]

vi.     2010–2011 West Lauderdale Elementary Administrative Position

Hodges selected Russell Keene, age 30, as Northeast Middle School Assistant Principal. Weems observes that Keene was much younger and less experienced than her. But Hodges testified that he made the decision based on the recommendation of the school's principal, Billy Burnham. Hodges Dep. 27. He also explained that Burnham "just was confident that [Keene]

---

[3]The District notes in its rebuttal that, among the reasons Weems would not have been considered for any of the 2010-2011 positions was that Weems had been hired in the full-time position co-funded by MDRS for that year when Ethridge announced his retirement. *See* Intragency Agreement [47-11]; Mosley Dep. 18–19. While the evidence in support of this assertion is thin, it adds weight to the legitimate, nondiscriminatory reasons for the selection of Cheatham and Keene.

could do the job because of his performance under him, his supervisor as a lead teacher, teacher and the assistant.  And that was his choice, his recommendation." *Id*.  The District has brought forward more than a mere subjective opinion and has met its burden as to this claim.

> vi.     2011–2012 Clarkdale High School Part-Time
>         Administrative and Part-Time Teaching Position

Ken Hardy, age 30, was already employed as a physics and algebra teacher at Clarkdale High School when he was promoted to part-time assistant principal.  Following his promotion, Hardy continued to teach physics.  Def.'s Resps. to Pl.'s First Set of Interrogs. at 5.  Hodges selected Hardy for the administrative position upon the recommendation of Cheryl Thomas, Roy McNeil, and John Lisenbe, the administrators of Clarkdale.  *Id.*  Hodges explained that Thomas in particular recommended Hardy "because of the way he was accepted by the students, the community, very close-knit community based school of ours, that [s]he thought he was the person to be part-time principal, outstanding teacher in the classroom."  Hodges Dep. 28. This is sufficient to met the burden of production.[4]

> c.     Pretext

Weems makes three arguments at the pretext-stage of the *McDonnell Douglas* analysis: (1) the District's hiring criteria was purely subjective, (2) Weems was more qualified than all of

---

[4]As to all these decisions, the District also cited testimony indicating that Weems experienced conflict in her relationships with her co-workers and that MDRS had asked for her removal.  *See* Mot. [47] at 11; Defs.' Mem. [48] at 7–8.  But the District did not appear to cite any record evidence showing that the decisionmakers relied on these specific contentions when making the disputed decisions.  Mosley does say that he was aware of the MDRS problem before these hiring decisions and that he generally considers "job performance" and "personality and ability to get along with others" when making hiring decisions.  Mosley Dep. 45–46.  But Mosley does not appear to come straight out and say these issues affected Weems's chances. Nevertheless, if these justifications are included, then they simply add to the already sufficient rationales.

the selected applicants, and (3) "look[ing] at the big picture," the "trend" of hiring applicants younger than Weems demonstrates age discrimination.  Pl.'s Mem. [51] at 24.  These arguments are not persuasive.

Weems's first argument—that the decisions were largely subjective—is of no moment. As stated in *Manning*, "[t]he mere fact that an employer uses subjective criteria is not . . . sufficient evidence of pretext."  332 F.3d at 882 (citations omitted); *see also Horak v. Glazer's Wholesale Drug Co.*, No. 06-10854, 2007 WL 713154, at *3 (5th Cir. Mar. 6, 2007) (quoting *Manning* and holding that "even if Glazer's decision-making process could be described as subjective in nature," these facts would not prove pretext).

On her second point, the Fifth Circuit has explained that "a fact finder can infer pretext if it finds that the employee was 'clearly better qualified' (as opposed to merely better or as qualified) than the employees who are selected."  *Churchill v. Tex. Dep't of Criminal Justice*, No. 12-20691, 2013 WL 4406706, at *2 (5th Cir. Aug. 19, 2013) (citing *EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th Cir. 1995) (additional citation omitted)).  But pretext will not be established if the employer's "judgments on qualifications are somewhere within the realm of reason."  *Id.* at *5 (citing *Deines v. Tex. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 282 (5th Cir. 1999)).  Instead, "the 'clearly better qualified' standard 'should be understood to mean that disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'"  *Id.* at *6 (citing *Bright v. GB Bioscience, Inc.*, 305 F. App'x 197, 205 n.8 (5th Cir. 2008) (additional citation omitted)).  "Demonstrating that one is 'clearly better qualified' is understandably very difficult to meet so as to avoid judicial

17

second-guessing of business decisions; and it is well-established that better education, work experience, and/or longer tenure with the company does not necessarily make a candidate clearly better qualified." *Id.* (citation omitted); *see also Price v. Fed. Express Corp.*, 283 F.3d 715, 723 (5th Cir. 2002) ("Price's better education, work experience, and longer tenure with the company do not establish that he is clearly better qualified.").

In this case, Weems relies almost exclusively on her advanced degree, tenure, and work experience in the District. But the record does not demonstrate that Weems was clearly better qualified than any of the successful applicants. Starting with her education, Weems holds a doctoral degree whereas Nelson, Dulaney, Crowe, Edwards, Cheatham, and Keene all hold master's degrees. But there is no record evidence that Weems's additional degree was required for any of these positions. *See Bacas v. Harvey*, 270 F. App'x 329, 331 (5th Cir. 2008) (holding that superior education did not show pretext because the advanced degrees were not required for the job).

Weems's "attempt to equate years served with superior qualifications . . . [is likewise] unpersuasive." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 959 (5th Cir. 1993). And as for her experience, that "alone will not suffice to raise a fact question as to whether one person is clearly more qualified than another. More evidence, such as comparative work performance, is needed." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996) (citing *Bodenheimer*, 5 F.3d at 959). "An employer is free to determine which type of experience is more relevant to an open position." *Cook v. Miss. Dept. of Human Servs.*, 108 F. App'x 852, 860 (5th Cir. 2004) (citing *E.E.O.C. v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1445–46 (5th Cir.

18

1995)).  "Therefore, evidence of substantially more of a certain type of experience is not probative of superior qualifications." *Id.*

Here, Weems was certainly qualified by education and experience.  But so were the prevailing candidates.  Nelson was promoted to principal after a decade in the District, had a sterling record in that same school, successfully held leadership positions in that school, and had filled in for the assistant principal and principal.  Calcote Dep. 13–17.  Dulaney had been a successful principal, had worked in a feeder elementary school for the middle school she was asked to lead, and lived in the community.  Mosley Dep. 24–27; Hodges Dep. 32–33.  Edwards had also been a principal for a large elementary school and consistently performed at a high level. Hodges Dep. 35.  Crowe had worked only two summers as an administrator, but she ranked higher than Weems in the interview.  One panelist gave unrebutted testimony that Crowe's answers were more specific and substantial than Weems's answers.  Edwards Dep. 13. Cheatham was principal for the feeder middle school of the high school he was asked to lead and had over two decades of administrative experience.  Mosley Dep. 19–21.  Weems has not demonstrated that any of these decisions were beyond the "realm of reason." *Deines*, 164 F.3d at 282.

The two remaining candidates present a somewhat closer question, but ultimately the same answer.  Keene was at some point elevated to assistant principal in the school where he was already working based on the request of his principal who had first-hand knowledge of his performance.[5]  Hodges Dep. 27–30.  Hardy kept, and was arguably more qualified than Weems to

---

[5]Weems argues that Keene was given the assistant principal position before he was certified as an administrator, citing Mosley's testimony.  *See* Pl.'s Mem. [51] at 15.  But Mosley would not agree that Keene was hired as assistant principal without the certification.  Mosley

occupy, the part-time physics teacher portion of his part-time-teacher/part-time-administrator job. Three administrators requested his promotion, and his principal requested the move because she perceived that he was a "talent[ed]" and "outstanding" teacher who was accepted by the students and the community in which he would continue to serve. Hodges Dep. 28. Weems has not demonstrated that the principals who requested advancement within their schools for Keene and Hardy acted beyond the realm of reason or that Hodges did so in accepting the requests.

Finally, Weems urges the Court to look at the big picture and infer age discrimination from the fact that the District continued to hire individuals younger than Weems. In essence, this is a statistical argument. But "statistical evidence usually cannot rebut the employer's articulated nondiscriminatory reasons." *E.E.O.C. v. Tex. Instruments Inc.*, 100 F.3d 1173, 1184 (5th Cir. 1996) (citing *Walther v. Lone Star Gas Co.*, 977 F.2d 161, 162 (5th Cir. 1992)). "The probative value of statistical evidence ultimately depends on all the surrounding facts, circumstances, and other evidence of discrimination." *Id.* at 1185 (citation omitted). And it appears that the Fifth Circuit is unwilling to find pretext based on statistics alone. *Id.* at 1184–85; *see also Jackson v. Watkins*, 619 F.3d 463, 467–68 (5th Cir. 2010) (affirming summary judgment and holding that "even assuming arguendo that his statistics were reliable, . . . such evidence is not sufficient here to raise a genuine issue of material fact in the absence of evidence tailored to rebut Watkins's specific reason of terminating Jackson—negative personal interactions" (citation omitted)).

---

Dep. 31. He testified instead that Keene was first promoted to lead teacher before receiving the administrative certificate. *Id.* Weems has not established that any particular certificate was either required or lacking. *See Roy v. U.S. Dep't of Agric.*, 115 F. App'x 198, 201 (5th Cir. 2004) (explaining that the plaintiff could not show she was "clearly better qualified" than the selected candidate based on absence of certification "because certification was not an exclusive education requirement").

In this case, there is no additional evidence sufficient to elevate the statistics to proof of pretext.  Regardless, of the nine positions for which Weems was qualified, two were given to employees that were essentially her age and five more were given to employees in their mid to late forties.  Only two fell outside the protected class.  *See Tyler v. La-Z-Boy Corp*., 506 F. App'x 265, 270 (5th Cir. 2013) (affirming summary judgment and noting that "more than half [of retained employees] were age forty or older, and three were the same age as, or older than" the plaintiff).  The Court finds that the statistics are not sufficient to prove pretext.

Because Weems cannot establish pretext or meet her ultimate burden of establishing that age was the "but for" reason she was not selected for the positions for which the District hired Nelson, Dulaney, Crowe, Edwards, Cheatham, Keene, and Hardy, the District's motion for summary judgment as to those claims is granted.

### 2.    Demotion

During the 2010–2011 school year, Weems drew half her salary from the District and the other half from MDRS through a contract with the District.  Rhodes Dep. 2.  But Weems lost the MDRS portion of her salary when MDRS decided that it could no longer work with her.  As described by Weems's direct report, Emily Berta, MDRS had a list of grievances.  For example, Berta testified that Weems criticized other teachers in front of students, Berta Dep. [47-13] at 8, had on several occasions "implied that MDRS was not working on behalf of the clients . . . ," *id*. at 9, and breached confidences regarding students on several occasions, *id*.  Berta was also critical of Weems's communication skills, indicating that she "would speak in a sarcastic tone, raise her voice, gesture with her hands.  Just difficult to work with." *Id*. at 9–10.  She also concluded that Weems had been insubordinate.  Berta and her supervisor Carol Elrod attempted

to patch the relationship with Weems in an April 2011 meeting, but concluded when it was over that they would rather discontinue this valuable program than work again with Weems.  Elrod Dep. 14, 29.  As a result, Weems lost half her salary and was left with a part-time job.

The District argues that any claim related to these events is not represented in the Amended Complaint, was never exhausted, was in any event waived, and otherwise lacks merit. Defs.' Mot. [47] at 7, Rebuttal [55] at 10.  Putting the pleading and exhaustion issues aside, Weems stated in her deposition that a claim based on her removal from the MDRS Transition Specialist position was not part of her suit against the District.  Weems Dep. 38–39.  Weems did not address this waiver argument in her Response, and the Court finds that the claim was indeed waived.

Regardless, it appears that Weems folds her demotion claim into her failure-to-promote claim.  In her Response, Weems dedicates one substantive paragraph to the demotion claim, arguing that the District should have promoted her to one of the previously identified positions rather than leave her in part-time status.  She has neither argued, nor demonstrated, that the District discriminated against her with respect to the decisions leading to her part-time status, and any such claims would fail if not waived.  All claims related to the failure to move her into one of the available positions have been addressed.

B.      State-Law Tort Claim Against Rhodes[6]

Weems alternatively claims that if she was not passed over for the various vacancies due to her age then it must have been the result of Karen Rhodes's tortious interference with

---

[6]Rhodes couches her substantive attack on Weems's tortious-interference claim as one under Rule 12(b)(6), but both parties refer to the summary-judgment record so the motion is converted.  Fed.  R. Civ. P. 12(d).

Weems's employment.  Am. Compl. [35] ¶¶ 10, 11.  It is important at the outset to define the scope of this claim.  Weems asserts that Rhodes "hated" Weems and used her influence with Hodges to ensure "Plaintiff's not being hired in an administrative position . . . ."  Am. Compl. [35] ¶¶ 10, 11.  In other words, the claim relates to the positions Weems did not receive rather than the ones she held or lost.  *Id.*  Nowhere in the Amended Complaint does Weems suggest that Rhodes tortiously interfered with any job Weems actually held.

Yet Weems's Response seems to morph this claim into something entirely new.  In it, Weems no longer argues that Rhodes intentionally interfered with her efforts to obtain the disputed positions.  Instead, she shifts the focus to the reduction in her salary after the MDRS incident and to other alleged acts of retaliation or harassment.  According to Weems, Rhodes retaliated against her in seven ways related to her job assignments and working conditions and further caused her to have a reduction in salary.  Pl.'s Mem. [51] at 27–28.  She asserts that a reasonable jury could find that this conduct was retaliatory and interfered with her contract with the District.  *Id.* at 28, 31.

Weems's attempt to raise a new claim in response to Rhodes's motion for summary judgment is not properly before the Court.  *See Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." (citation omitted)).  The Amended Complaint did not encompass the claim Weems now urges, and to the extent Weems appears to rely entirely on this new theory, Rhodes is entitled to summary judgment.

Case 4:12-cv-00088-DPJ-FKB  Document 59  Filed 10/28/13  Page 24 of 27

Even if the Court were to consider this new theory, summary judgment would still follow. Weems argues the claim as one for tortious interference with contract. To prevail, she must show breach: "An action for tortious interference . . . ordinarily lies when a party maliciously interferes with a valid and enforceable contract, causing one party not to perform and resulting in injury to the other contracting party." *Levens v. Campbell*, 733 So. 2d 753, 760 (Miss. 1999) (citation omitted). Most of Weems's complaints in her Response relate to working conditions, and she seems to suggest a hostile-working-environment-type claim framed under tortious interference with a contract. But to state a claim, she must show that Rhodes induced a breach, and all but one of the alleged acts have nothing to do with the terms of her contract. The one assertion that could conceivably relate to any change in her contractual position is the assertion that because of Rhodes, Weems saw her salary cut in half.

But even as to the reduction in salary—a claim Weems waived—she has not shown a breach of contract, interference by Rhodes, or causation. As discussed above, Weems lost the MDRS portion of her salary when MDRS concluded that it would rather cancel the program than continue working with Weems. Its reasons related to Weems's communication skills, insubordination, and other issues that did not involve Rhodes. Moreover, Weems completed the one-year contract with MDRS and did not receive a new contract. Accordingly, there was no breach.

Finally, to the extent Weems may have intended to persist in the claim she actually asserted in the Amended Complaint—that Rhodes interfered with her efforts to obtain a new position—that claim likewise fails. Because there were no breached contracts as to the new positions, the claim is better analyzed as one for tortious interference with prospective business

24

advantage.[7]   The theory is derived from tortious interference with a contract and shares the same

elements.  *AmSouth Bank v. Gupta*, 838 So. 2d 205, 214 (Miss. 2002); *see also Nichols v.*

*Tri-State Brick & Tile Co.*, 608 So. 2d 324, 329 n.6 (Miss. 1992).

      Under either theory, Weems must prove "1) the acts were intentional and willful; 2) that

they were calculated to cause damages to the plaintiff in h[er] lawful business; 3) that they were

done with the unlawful purpose of causing damage and loss, without right or justifiable cause on

the part of the defendant; and 4) that actual loss occurred."  *Levens*, 733 So. 2d at 760.  She

likewise must show a contractual relationship, or under the interference-with-prospective-

advantage theory, a "'reasonable likelihood that the relationship will come into existence.'"

*Ward v. Life Investors Ins. Co. of Am.*, 383 F. Supp. 2d 882, 888 (S.D. Miss. 2005) (citing

*Hubbard Chevrolet Co., v. Gen. Motors Corp.*, 682 F. Supp. 873, 878 (S.D. Miss. 1987), *aff'd*,

873 F.2d 873 (5th Cir. 1989)).  Thus, she must show that she would have obtained the disputed

positions "but for the alleged interference."  *Nichols*, 608 So. 2d at 329.  Weems fails to establish

these elements.

      To begin with, Weems's evidence on causation and Rhodes's alleged interference is

purely speculative.  In *Levens*, the Mississippi Supreme Court found a sufficient employment

relationship, but affirmed summary judgment because the defendant denied involvement and the

plaintiff failed to prove that the defendant "said or did anything to stop [the plaintiff] from

---

      [7]Though similar, the distinction was explored in *Cenac v. Murry*, where the Mississippi Supreme court explained that tortious interference with a contract occurs when a wrongdoer "cause[s] another to breach a contract."  609 So. 2d 1257, 1268 (Miss. 1992).  Tortious interference with prospective advantage extends to "interference with relations which were merely prospective or potential . . . .  For the most part, the 'expectancies' thus protected have been those of future contractual relations, such as the prospect of obtaining employment . . . ." *Id*. at 1270 (citing Prosser & Keeton, Torts § 130 (5th ed. 1984)).

working . . . ."  *Id*.  The same is true here.  Even assuming Rhodes mistreated Weems as Weems contends, Weems must still show Rhodes intentionally interfered with her efforts to obtain these jobs, something Rhodes denies under oath.  *See* Rhodes Aff. 4 (swearing that she had "nothing to do with hiring administrators in the Lauderdale Count School District and [had] no influence over the Superintendent or anyone charged with the duty of making recommendations of the Superintendent for any position within the District except for the two (2) positions within [Rhodes's] Department").  As to decisions made regarding hires in Rhodes's department, Rhodes would have been within the scope of her privilege.  *See Courtney v. Glenn*, 782 So. 2d 162, 165 (Miss. 2001) (citation omitted).  As for any of the other decisions, Rhodes states that she was "not asked to give input nor did [she] offer any input to the Superintendent to dissuade him from hiring Dr. Carol Weems for any position."  Rhodes Aff. 4.

In her deposition, Weems conceded that she had no evidence that Rhodes gave Superintendent Hodges any input about who should be hired.  Weems Dep. 110.  She likewise admitted that she had no proof Rhodes was ever contacted about any of the positions Weems sought or spoke with anyone about those positions.  *Id*.  At best, Weems speculates that the presence of Rhodes's friend Teri Edwards on one of the interview panels proves Rhodes interfered with her employment.  Weems Dep. 109–10.  Yet Edwards offered unrebutted testimony denying any conversations with Rhodes about Weems.  Edwards Dep. 9.

Rhodes made these points in her original motion, Defs.' Mot. [47] at 3; Defs.' Mem. [48] at 3, but Weems failed to adequately rebut them.  She has not show Rhodes interfered with her attempts to obtain these positions or that but for Rhodes's alleged interference Weems would have been the successful candidate.  To survive summary judgment, Weems must come forward

26

with record evidence to support each essential element of her claim.  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial.  *TIG Ins. Co.*, 276 F.3d at 759.  Weems has not established a question of fact as to Rhodes's alleged interference or that she would have obtained the positions but for that alleged interference.  Summary judgment is therefore appropriate.

## IV.  Conclusion

The Court has considered all the parties' arguments.  Those not specifically addressed would not have changed the outcome.  For the foregoing reasons, Defendants' motion [47] is granted.  A separate judgment will be entered in accordance with Federal Rules of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 28th day of October, 2013.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE